MISSOURI VALLEY TRUST COMPANY, Appellant, v. S. JOSEPH, PARKVILLE & KANSAS CITY RAILWAY COMPANY and CHARLES F. ENRIGHT, Respondents.

Kansas City Court of Appeals, March 4, 1912.

1. JUDGMENTS: Jurisdiction: Service on Corporation: Delinquent Stockholder. Plaintiff purchased a judgment against the defendant railway company and, finding the latter insolvent, filed a motion under the statute to obtain an execution against the other defendant as a delinquent stockholder. *Held*, that as the court had no jurisdiction for want of service on the railway company the judgment was void, and plaintiffs' motion should be denied.

2. ———: ———: Estoppel. A delinquent stockholder in an insolvent corporation, is not estopped from setting up want of jurisdiction in the court to render a judgment because there was no service on the corporation, where it is sought to hold him liable as a delinquent stockholder, by a corporation, that

had purchased the judgment through the said stockholder who was one of its officers, but who was not aware, at the time, that the judgment was void.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

AFFIRMED.

*John F. Cell* for appellant.

*John E. Dolman* and *Hogsett & Bogle* for respondents.

BROADDUS, P. J.—This is a proceeding by motion under the statute to obtain execution against the defendant, Enright, who is alleged to be a delinquent stockholder of the St. Joseph, Parkville & Kansas City Railway Company. The motion is based on a judgment rendered by the circuit court of Jackson county on May 9, 1907, in favor of Reed & Reed against the said railway company for $5,670.

The St. Joseph, Parkville & Kansas City Railway Company was organized for the purpose of building an electric railway between St. Joseph and Kansas City. Its capital stock was $5,000,000, and its articles of association were filed May 18, 1903. It proved to be a mere paper corporation, as it did not within two years after filing its articles of association begin the construction of a railroad; nor within one year thereafter expend ten per cent of its capital stock on such construction; and never acquired any right of way. It was shown that the company expended in one way or another in all about $1900 in the course of its existence. It kept no books of its own and its accounts were kept by the plaintiff company. John J. Tootle was the president of the plaintiff corporation and a subscriber to the capital stock of the railway company for ten shares of the par value of $100 per share, and defendant was a subscriber for 450 shares of its stock.

The other stock with the exception of a Mr. Devitt were taken by others whose names it is not necessary to mention.

The judgment was for $5,670. It was entitled to a credit of $1,520 paid March 29, 1910, and $1,000 paid May 18, 1910. The plaintiff purchased and took an assignment of said judgment of Reed & Reed, and, as the railway corporation was insolvent and execution proof, this proceeding was instituted against defendant Enright, who had not paid all his subscription to the capital stock.

The first summons it seems was not executed until after the date when defendant was directed to appear and answer. The defendant resided in Jackson county and the second service of summons was served on the railway company in Buchanan county. The return of the officer serving the summons reads as follows: ''Executed the within writ and petition by delivering a true copy of the writ and petition to Charles F. Enright, sec., and in charge of the office of the St. Joseph, Parkville & Kansas City Railway Company, the president and other chief officers not found in my county,'' etc.

One of the defenses set up by Enright is that he is not the owner of the stock, that he made the subscription for the plaintiff corporation, and, as such, was acting as its trustee and not in his individual capacity. There is evidence going to show that he was acting for the plaintiff in making the subscription for the 450 shares of the railway stock, and, as such, was its trustee. On the other hand this is denied and evidence offered to show that he was acting solely for himself. While Tootle was president of the plaintiff company, Enright was its vice-president and treasurer, and was the more active in the transaction of its business than Tootle, the president. But it is sufficiently shown that the latter also was cognizant of what transpired in its business operation and must

have known in what capacity the defendant Enright was acting in the subscription he made to said stock. It was shown that Tootle and defendant thought it best to obtain the judgment of Reed & Reed and that Enright undertook and carried on the negotiations that resulted in such purchase at and for the sum of $4,100.

The plaintiff asked leave to amend the sheriff's return of service in the case of Reed & Reed against the railway company so as to show that the writ and petition was served by leaving a copy thereof at the business office of the defendant, etc. The proposed amendment would have supplied the defect of the original one made by the sheriff. Upon objection the leave to amend was denied. But no exceptions were taken to the ruling of the court. A second motion was made for leave to amend as will be shown hereafter.

The defendant's answer sets up several matters as a defense viz.: That defendant subscribed for the stock in question as trustee of the plaintiff; that on July 13, 1906, at the time the original suit was filed as well as on the 9th of May, 1907, the date when the judgment was taken, the corporate existence and powers of the railway company had entirely ceased, and that, therefore, the judgment obtained was void; that the purchase of the judgment from Reed & Reed by plaintiff was *ultra vires;* that the circuit court of Jackson county had no jurisdiction of said railway company, because the return of service was not sufficient to confer jurisdiction upon said court.

Tootle made the payment of $1,000 credited on the judgment and Martin A. Devitt, another stock subscriber, paid the other credit of $1,520.12. The trend of the testimony is to the effect that Tootle and Enright were the principal sponsors of the railway company, Enright being the most active of the two.

The cause was tried before the court without the aid of a jury and the finding and judgment were for defendant Enright from which plaintiff appealed.

The original judgment of Reed & Reed against the railway company was attacked on the ground that the court had no jurisdiction. One of the reasons assigned is that there was no legal service on the defendant corporation. The defect of the return of the sheriff is that it does not show that service was had at the office of the corporation. The appellant offered to supply the omission by having the sheriff amend his return so that it would recite that proper service was made. The offer to amend the return of the sheriff was made at two different times. On the first occasion it was overruled by the court, but as the appellant made no objection to the action of the court it waived its right to have such action reviewed on appeal. The second offer was made after all the evidence had been introduced, but before the court rendered its finding and judgment. The reason the court assigned for its action was that the matter had already been considered. The plaintiff accompanied its motion with the statement that since the ruling of the court on the former motion "new evidence has come to the knowledge of plaintiff not known to it prior to said hearing, and that said new evidence will show that the service made by the sheriff aforesaid was made in all respects as required by law, and that said sheriff should be permitted to amend his return," etc. There was no offer of such evidence in support of the motion. The court overruled this motion on the ground that the question had already been passed upon on the prior motion. Plaintiff excepted to the action of the court. Section 1848, R. S. 1909, recognizes the right of amendments in such cases. They are not so allowed as a matter of course, but upon a proper showing. The plaintiff should have offered its evidence to show to the court that the service was properly

made before the court could rightfully permit the amendment.

Ordinarily, the failure to show that there had been a proper service on the defendant in a suit would render the judgment void. But, as the appellant insists that defendant is estopped by his conduct in denying its validity, we will have to consider that question. And if that question is determined against respondent, he insists that the judgment is void for the further reason that the plaintiff was a defunct corporation and as such had no legal existence and could not, therefore, maintain an action at law.

Appellant's contention is that respondent, Enright, by his action in negotiating the purchase and transfer of said judgment to appellant, he thereby became a party to the transaction and is estopped from denying that said judgment is invalid.

The answer of defendant pleaded among other matters that the judgment was void for want of service on the defendant. The reply, except as to certain matter alleged in the answer, contained a general denial, and alleged, that defendant was estopped to deny the existence of the railway company because he was one of its officers; and that he was estopped from setting up the plea of *ultra vires* because he was an officer in plaintiff's company; and that he was estopped from taking advantage of the irregularities in the suit against the railway company because he was an officer of said company and was fully advised of the institution of the suit. But the plaintiff failed to plead that defendant, Enright, was estopped from denying want of jurisdiction in the court to render the judgment for want of service on the defendant.

Appellant, however, insists that evidence was introduced without objection showing that defendant, Enright, had negotiated for the purchase and transfer of such judgment to plaintiff and also he ought to have known of the defect of service. Waiving the

question of pleading we do not think the defendant by such act was estopped from denying the validity of the judgment. He was acting in the capacity as agent of the plaintiff; and Tootle, who owned all or nearly all the shares of stock in the plaintiff corporation, thought it best to buy and thus get control of the judgment. Had Enright known at the time he purchased said judgment that it was invalid it would have constituted fraud and he would not be permitted in a court of equity to profit by his fraudulent act. But the record fails to show, that he had any such knowledge. He and Tootle had equal knowledge as to that matter, and the object in taking over the judgment was to relieve the railway from a supposed lien of the judgment, both being subscribers to its stock and desirous to protect their interest as such from a threatened sale by the plaintiffs in the judgment. The purchase of a void judgment under such circumstances did not constitute fraud and could not operate as an estoppel. It was a mistake in which both Enright, as treasurer, and Tootle, as president of plaintiff corporation, participated. It takes something more to constitute an estoppel. Knowledge of Enright at the time he negotiated and purchased as agent of plaintiff that the judgment was void was necessary to constitute estoppel. [Bigelow on Estoppel, 457; Blodgett v. Perry, 97 Mo. l. c. 272-3.]

The decision of this question adversely to appellant relieves us of the necessity of deciding the question whether the railway company was *functus officio* and the judgment void for that reason as contended by the respondent, and other questions raised by the parties. As there was no estoppel shown, it follows that the judgment was void for want of service on defendant, therefore, it follows that the cause should be affirmed. Affirmed. All concur.